**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

MONIQUE WADE,

    Plaintiff,

    v.
                                 Case No. 2:24-cv-02938-BCL-atc

CITY OF MEMPHIS, JERRI GREEN, and
JB SMILEY, JR.,

    Defendants.

---

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND
ADOPTING REPORT AND RECOMMENDATION**

---

Before the Court is Magistrate Judge Annie T. Christoff's Report and Recommendation (Doc. 26) on Defendant's Motion to Dismiss (Doc. 13). Plaintiff filed objections (Doc. 27) within the allotted fourteen (14) days. For the reasons given below, those objections are **OVERRULED** and the Report is **ADOPTED**. The Motion to Dismiss is **GRANTED**.  The Court also **GRANTS** Defendants' Motion to Strike Plaintiffs' Supplemental Objections (Doc. 43) and Plaintiff's various Requests for Judicial Notice (including Docs. 31-33).  Other pending Motions (e.g., Doc. 36) are **DENIED AS MOOT**.

**STANDARD OF REVIEW**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of certain district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869–70 (1989)); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). For non-dispositive

orders, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). For dispositive matters, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review—under a de novo or any other standard—those aspects of the report and recommendation to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *See id*. at 151.

## DISCUSSION

**I.    Plaintiff's timely objection to the Report and Recommendation are OVERRULED.**

The Court has reviewed the Report and the entire record in this matter and finds no clear error or error of law in the Magistrate Judge's analysis or conclusions.

**A.**    Plaintiff first objects to the dismissal of her § 1983 First Amendment Retaliation Claim, stating the Magistrate Judge erroneously concluded that Plaintiff failed to allege an "adverse action." Doc. 27 at 1. To prevail on a First Amendment retaliation claim, plaintiffs must demonstrate:

(1) he engaged in protected conduct;
(2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and
(3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Sensabaugh v. Halliburton*, 937 F.3d 621, 627–28 (6th Cir. 2019). To establish an adverse action for First Amendment retaliation purposes, "a plaintiff must show that the action 'would chill or

silence a person of ordinary firmness from future First Amendment activities.'" *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014).

Plaintiff alleges that the following adverse actions were taken against her:

(1) Councilmember Smiley attempted to prematurely adjourn the meeting, allegedly to silence public opposition;

(2) Councilmember Green labeled protected political speech as "threats and warned the public about "consequences" for making such statements; and

(3) Plaintiff and her son were targeted, interrupted, and dismissed by elected officials in a public forum where others were granted full time and treated respectfully.

Doc. 27 at 2.

Plaintiff attached to her complaint the transcript of the hearing at which she claims these actions occurred, and the Court therefore may consider the transcript at the motion to dismiss stage. Doc. 1-1; *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 (6th Cir. 2008) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Plaintiff urges that the transcript should not be considered at the motion to dismiss stage because it does not capture "tone, interruptions, and demeanor," the fact is that the transcript does capture interruptions and tone and demeanor could not possibly change the result here because the transcript confirms that nothing that happened at the meeting (and certainly nothing directed at Plaintiff) would—even if done with a hostile demeanor and tone—deter a person of ordinary firmness from future First Amendment activities.  Put simply, Plaintiff mischaracterized the "adverse actions" she alleged occurred during the City Council meeting.

During the public comment period, eight people spoke concerning the "More for Memphis" Ordinance, some for and some against. Each person had two minutes to speak. The transcript demonstrates no one spoke significantly longer than the allotted two minutes (the largest deviations

were a comment in support of More for Memphis that lasted nearly three minutes but was briefly interrupted in the middle, and a three-minute comment in opposition). *Id*. at 13-14, 17-18. After the third speaker, JB Smiley Jr. prematurely adjourned the meeting before public comments had ended. Doc. 1-1 at 17. Based on the timestamps on the transcript, less than a minute elapsed between the call for a motion to adjourn, and Mr. Smiley's correction, in which he states, "They did have cards. Oh it's a lot. Council members. Council members. They did find cards. They did find cards. All right, we're gonna hear the four or five public comments." *Id*. at 17. The premature adjournment was quickly remedied, and each person wanting to speak was able.

Plaintiff spoke for 1 minute 56 seconds. *Id*. at 21-20. Mr. Smiley responded, "[t]hank you so much" before inviting the next speaker to the podium. *Id*. Xavier Wade, Plaintiff's 21 year-old son, proceeded to speak for 1 minute 56 seconds. *Id*. at 21. At the conclusion of Mr. Wade's public comment, Mr. Smiley stated, "Hey, Mr. Wade, quick question for you. I've heard the comments about More for Memphis, but I don't know what your issue is. Could you articulate what the issue is with the More for Memphis?" *Id*. Mr. Wade did not directly answer but suggested that a vote for the project would lead to a council member's criminal conviction. *Id*. Mr. Smiley thanked Mr. Wade and then asked if someone else could articulate the issue with "More for Memphis." *Id*. The transcript indicates Mr. Smiley prevented Mr. Kent from answering--"Not you, Mr. Kent. Not you, not you, not you. Hold on, hold on, hold on, hold on, hold on, hold on, hold on, hold on, hold on, hold on." *Id*. Instead, Diamond Johnson responded that "we are speaking on behalf of More for Memphis on behalf of Dr. Gerlad Kiner." *Id*. Mr. Smiley then allowed Mr. Kent to speak for his allotted two minutes. *Id*. at 23-24. Ms. Johnson was then allowed additional time to answer Mr. Smiley's question before her two minutes began. *Id*. During her two minutes, she promised to

4

"fil[e] a formal complaint with the Department of Justice to investigate the blatant corruption surrounding this ordinance." *Id.*

Mr. Smiley responded to the public comments, including by defending the lawfulness of council members' actions, and concluded by stating, "But I understand your concern, apply for council grants, and thank you for showing up. I really believe that government works best when we have active participation in the public. Thank you." *Id*. at 28. Jerri Green ended the meeting by stating,

> I find it troubling that from the public guise, we have had multiple threats posed towards council members today. It is fine and right if you think we are acting illegally or unethically to file your complaint, but to threaten us with complaints before votes are cast, I believe is covered at the beginning of every meeting and is not allowed. So I suggest to whoever is writing these speeches for you all to read, that you consider carefully before you come and read them again, and they consider carefully before they write them, because we will not as a body allow threats to be made that could influence any votes. Thank you.

*Id*.

*First*, the record does not support that Plaintiff faced adverse action when she shared her public comments during the hearing. The transcript she submitted to the Court demonstrates she was able to speak uninterrupted for the entirety of her allotted two minutes. At no point did Defendant interrupt her or prevent her, or anyone else for that matter, from speaking. The pleadings confirm that no adverse action was directed towards her or impacted her.

*Second*, even if the record did allow some possibility of hostility or tension, that would not rise to the level of a deterrent in this forum. When determining whether a person of ordinary firmness would be deterred, courts must tailor the analysis to the circumstances of the specific retaliation claim. *Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir.1999) (formulating test under "adverse action" prong for elected city council member as whether a "public official of ordinary firmness" would be deterred from exercising her First Amendment rights); *see also*

5

*Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (asking how a criminal defense attorney of reasonable firmness would perceive the challenged actions). And in the context of a public comment session concerning a contentious issue, a certain level of antagonism would be expected and accepted by a public commenter of reasonable firmness. Doc. 1-1 at 20.

Even construing the Complaint liberally as required, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), these allegations do not meet the threshold for First Amendment retaliation. Plaintiff's objection is **OVERRULED**.

**B.**     Plaintiff next objects to the dismissal of her RICO claim, asserting that the Magistrate Judge applied Rule 9(b) too narrowly and that she does not lack standing. Doc. 27 at 2. Plaintiff states she sufficiently alleged ongoing fraud relating to "government contracting and public deception." *Id*. at 3.

"To state a RICO claim, [Plaintiff] must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (internal citation omitted). The predicate acts Plaintiff alleges are mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. Doc. 1 at 9-10. Plaintiffs alleging fraud must "meet the more rigorous pleading standards of [Federal Rule of Civil Procedure 9(b),]" which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting Fed. R. Civ. P. 9(b)). "Courts rigorously enforce Fed. R. Civ. P. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed, and when and how each mailing furthered the fraudulent scheme." *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 763 (E.D. Mich. 2014). In order

to allege fraud with particularity, the plaintiff, "at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [it] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Aaron v. Durrani*, 2014 WL 996471, at \*6 (S.D. Ohio 2014) (citation omitted).

The Complaint alleges that mail services were used to circulate "false and misleading information regarding the $100 million in funding and the benefits to the More for Memphis initiative." Doc. 1 at 9. It also claims that wire fraud was used in "communicating fraudulent claims about funding and benefits via electronic means, including emails, social media, and public presentations." *Id*. Plaintiff does not identify the individuals involved in the mail or wire fraud, instead pleading, "Defendants… and associated organizations…, and other elected officials acted in concert as an enterprise." *Id*. "A complaint 'may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). Plaintiff also does not assert any specific details about what was being mailed and/or wired or when this information was being sent. Because Rule 9(b) requires pleading with particularity, these general assertions are insufficient to assert fraud.

This Court need not consider Plaintiff's objection based on "standing"—to be clear, statutory standing, which speaks to the merits of a cause of action, *see Lexmark Inter'l v. Static Control Components, Inc.*, 572 U.S. 118 (2014)—to bring a RICO claim because Plaintiff has otherwise failed to plead a RICO claim for the reasons discussed. Plaintiff's objections as to her RICO claims are **OVERRULED**.

**C.** Plaintiff also argues that her challenge to the "More for Memphis" ordinance is ripe because it is not based on the ordinance's enactment but rather "current, ongoing constitutional violations, including misleading the public about funding, suppressing dissent, and unequal access to government opportunities-all of which are presently occurring harms." Doc. 27 at 4. To the extent Plaintiff means to argue that the Ordinance itself will violate the law and cause these harms, her challenge is not ripe until (at least) the Ordinance is actually adopted. To the extent Plaintiff argues that there is ongoing wrongdoing stemming from the debate over it or the process relating to its possible promulgation, Plaintiff has—for the reasons discussed here and in the Report and Recommendation—failed to state a viable claim based on such wrongdoing. To the extent Plaintiff is indirectly objecting to the dismissal of other constitutional claims, this Objection is too vague and general to allow review. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) ("Overly general objections do not satisfy the objection requirement. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

Plaintiff's objection as to the "More for Memphis" ordinance is **OVERRULED**.

**D.** Plaintiff also seems to assert an Equal Protection claim in her objections based on the dismissal of her Complaint, stating, "dismissing Plaintiff's claims while shielding Defendants from discovery--despite well-pled allegations of favoritism, public fraud, and suppression of political speech-raises Equal Protection Clause concerns when the same government is concurrently awarding no-bid contracts to politically connected entities (as documented in City of Memphis grant records)." Doc. 27 at 4. In evaluating a motion to dismiss, courts "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). Parties cannot "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

8

Plaintiff's objection is **OVERRULED**.

E.    Next, Plaintiff objects on the grounds that the Magistrate Judge failed to consider civil analogues when dismissing her claims under criminal statutes. Doc. 27 at 3-4. She asserts that the Court should consider these allegations as claims related to negligence per se and/or 42 U.S.C. § 1983. *Id*.

Because this Court has already determined that Plaintiff has failed to plead a constitutional violation, construing her criminal claims as § 1983 claims necessarily fail. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (to assert a § 1983 claim, Plaintiff must prove (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law.").

At this point, this Court has dismissed all federal claims and therefore declines to exercise supplemental jurisdiction over any state law claims that could be construed from the Complaint. *Michigan Elec. Emps. Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 782 (W.D. Mich. 2008) ("[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims."). "Justice and comity are served by deferring to [Tennessee's] courts, which are best equipped to interpret and apply their own State's law." *Id*.

Plaintiff's objections as to her claims arising under criminal statutes are **OVERRULED**.

## II.    Plaintiff's various Requests for Judicial Notice (Docs. 31, 32, 33) are GRANTED.

Plaintiff has filed sundry requests for judicial notice.  The Court GRANTS these requests in the sense that the Court has reviewed and considered the materials submitted, even if the requests are improper insofar as Plaintiff did not present these materials to the Magistrate Judge prior to the Report and Recommendation or offer any explanation for why she did not do so.  But

9

those materials do nothing to alter the bottom line that the Magistrate Judge rightly recommended that Plaintiff's complaint be dismissed.

### III.    Defendants' Motion to Strike (Doc. 43) Plaintiff's Supplemental Objections to the Report and Recommendation is GRANTED.

More than two months after Magistrate Judge Christoff submitted her Report and Recommendation, Plaintiff filed Supplemental Objections. Doc. 30. Plaintiff later filed Second Supplemental Objections. Doc. 37.  Defendants then moved to strike this filing and several others for failure to comply with governing deadlines and the governing Rules. Doc. 43. Because Plaintiffs' supplemental objections are untimely, Defendants' Motion to Strike is **GRANTED**, and Documents 30 and 37 are **STRUCK**. *See* Fed. R. Civ. P. 72(b); LR 72.1(g).

**<u>CONCLUSION</u>**

For the forgoing reasons:

1.   The Court **GRANTS** Defendants' Motion to Strike Plaintiff's Supplemental Objections (Doc. 43);

2.   The Court **GRANTS** Plaintiffs' various Requests for Judicial Notice (e.g., Docs. 31-33); and

3.   The Court **ADOPTS** the Report and Recommendation (Doc. 26) and **OVERRULES** Plaintiff's objections (Doc. 27). Defendant's Motion to Dismiss (Doc. 13) is **GRANTED.**

4.   All other pending Motions (e.g., Doc. 36) are **DENIED** as moot.

Because the dismissed complaint is Plaintiff's first complaint, the Court allows Plaintiff leave to amend as she requests. Doc. 27 at 5. Plaintiff **SHALL** file any amended complaint within 14 days of the date of this Order.  If Plaintiff does not do so this lawsuit will be dismissed with prejudice and the case will be closed.

**IT IS SO ORDERED**, this 6th day of August, 2026.

10

s/*Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE